UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

BALTIC WIND, LTD., ET AL.                        CIVIL ACTION

v.                                               NO. 18-13449

                                                 c/w 19-9503

LADY OF PERPETUAL HELP M/V, ET AL.               SECTION "F"


ORDER AND REASONS

Before the Court are three motions for summary judgment brought by the plaintiffs, "Baltic Wind": one against defendant Marquette Transportation Company on liability, another against Marquette on damages, and another against consolidated plaintiff Cooper Consolidated, LLC.[1]  For the reasons that follow, the motions are DENIED.

**Background**

In April 2018, the bulbous bow of the M/V BALTIC WIND was damaged.  That much is certain.  Less certain is *what* external object(s) caused such damage, and *when*.  The parties' disagreement in this consolidated case is largely reducible to a disagreement over the uncertain answers to those questions.

---

[1]  In case number 19-9503, which has been consolidated with this case, Cooper sues Baltic Wind for damage the BALTIC WIND vessel allegedly caused Cooper's mooring piles on April 21, 2018.

1

The parties postulate divergent theories of the case. Because much of the evidence they cite in doing so is as contradictory as it is compelling, this is not a case for summary judgment.

I.

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate where the record reveals no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine dispute of fact exists where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Supreme Court has emphasized that the mere assertion of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, where contradictory "evidence is merely colorable, or is not significantly probative," summary judgment remains appropriate. Id. at 249-50 (citation omitted). Likewise, summary judgment is appropriate where the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the nonmoving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean

Drilling & Expl. Co., 974 F.2d 646, 649 (5th Cir. 1992). Instead, it must come forward with competent evidence, such as affidavits or depositions, to buttress its competing claim. Id. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible at trial do not qualify as competent opposing evidence. FED. R. CIV. P. 56(c)(2); Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987) (per curiam).

Finally, in evaluating a summary judgment motion, the Court must read the facts in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255.

II.

A.

At bottom, this case concerns two incidents that occurred on the Mississippi River in a span of three days. In the first, it is claimed, on April 21, 2018, the BALTIC WIND was tossed about by natural causes and allegedly struck mooring piles belonging to Cooper. If such a collision did in fact occur, then it is questionable whether, and to what extent, such collision damaged the bulbous bow of the BALTIC WIND and/or the Cooper mooring piles.

Three days later, on April 24, 2018, barges belonging to Marquette allided with the BALTIC WIND. In these motions for summary judgment, Baltic Wind argues that evidence and reason conclusively establish that that accident alone caused the damage

3

at issue in its suit; Marquette and Cooper disagree. In their view, the BALTIC WIND had already sustained damage to its bulbous bow from the first accident of three days prior – a fact made all the more clear by the "emphatic[]" denials of the Marquette crew that the runaway barges contacted anything more than the BALTIC WIND's anchor chain. See Marquette Opp. on Liability at 4.

As they have done for two full years now, the parties haggle inexorably over the facts surrounding both incidents. At present, however, the burden of persuasion on the motions for summary judgment before the Court lies with Baltic Wind. Indeed, as previously noted, to prevail on its motions, Baltic Wind must demonstrate that the record taken as a whole could not lead a rational trier of fact to factually or legally find for Marquette and Cooper, *even when construing the record in Marquette and Cooper's favor*. See Anderson, 477 U.S. at 255; Matsushita, 475 U.S. at 586.

As explained below, it has failed to do so.

B.

In the record before the Court, material disputes of fact abound. Chief among them, and fatal to the present motions, is a dispute concerning the events of April 21, 2018.

For its part, Baltic Wind admits that a "strong 4-5 knot current caused the [] BALTIC WIND['s] . . . bow to yaw" that day, but rejects its adversaries' theory that the BALTIC WIND was

4

damaged when such "yawing in the current" caused "the vessel's port quarter [to] allide[] with Cooper's west bank barge fleet." See Mot. Against Marquette on Liability at 2; see also id. at 7 ("On April 21, 2018, Pilot Christian Short moored the [] BALTIC WIND at the downriver position of the Cooper mid-stream facility, with two lines to each of the three forward buoys, two lines to each of the two stern buoys, both forward anchors in the water, and its bow parallel/abeam and approximately 250–300 feet riverside of the middle of tier 9 of the Cooper fleet. At 1113 hrs., shortly after the pilot disembarked, with the main engine already shut down, the strong 4.5 knot current caused the vessel's bow to yaw and one of the forward center mooring lines, which was on a mooring bitt (not a winch and could not 'pay out') to part. The current strength overcame the braking capacity of the port and starboard lines winch brakes and those lines slacked, but the centerline remaining on the bitt could not slacken, and held the vessel's head. The chief mate also shortened the starboard anchor from 7 to 5.5 shackles (about 40 meters), which held the vessel's head and starboard side. The centerline and the starboard anchor arrested the vessel's yawing and prevented any rapid or violent movement to either side." (emphasis omitted) (footnotes omitted)).

Marquette and Cooper assert just the opposite – namely, that the BALTIC WIND *did* in fact strike (and damage) Cooper's mooring buoys at about River Mile Marker 71 on April 21. Critically for

5

present purposes, they marshal a robust pile of evidence in support of that notion, including, inter alia, the confirmatory deposition testimony of no less than four eyewitnesses (Michael Ellis, Calvin Pizani, John Richards, and Alvin Gumpert) and a cellphone video containing both video evidence of an apparent collision and the colorful present sense impressions and excited utterances of another eyewitness who has not been located for testimony.  See Cooper Opp., Ex. 12 (video).

All told, the contradictory evidence put forth by Marquette and Cooper demonstrates a live factual dispute of clear materiality.  Cf. Tolan v. Cotton, 572 U.S. 650, 656 (2014) (per curiam) ("[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" (quoting Anderson, 477 U.S. at 249)).  As such, try as it may to present its own version of events as factually superior, Baltic Wind cannot dismiss the competing evidence raised by its adversaries as mere "theories or possibilities" that do not warrant full consideration and exploration at trial.[2]

*   *   *

---

[2]   Because Baltic Wind has failed to establish its legal entitlement to judgment on liability, it cannot begin to establish its entitlement to any particular measure of damages.

6

Summary judgment is appropriate where the evidence is so one-sided that a reasonable factfinder could not possibly find in favor of the nonmoving party. That is not the case here.

As a result, trial appears unavoidable in this matter. There, Baltic Wind can attempt to prove its version of events by a preponderance of the evidence. As it stands now, however, the Court cannot bless Baltic Wind's effort to end-run a trial of the parties' competing claims.[3]

Accordingly, IT IS ORDERED: that the plaintiffs' motions for summary judgment are DENIED.

New Orleans, Louisiana, December 17, 2020

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[3] Counsel are reminded to become more mindful of and familiar with 28 U.S.C. § 1927.